THE ALLERTON PACKING COMPANY

*v.*

JOHN EGAN.

</div>

86   253
76a  612

86   253
95a  1495
86   253
j112a 1241

1. NEGLIGENCE — *in providing machinery.*   Where a person provides machinery to be used by his employees he can not be held liable for injury received by the imperfection thereof, if he has used a very high degree of care in its manufacture or selection, both as to the material and construction.   The court does not decide whether ordinary prudence and care, in this respect, are sufficient to exonerate the employer.

2. SAME — *contributory.*   In a suit by an employee of a company to recover damages for an injury received by the explosion of a steam tank, it was *held*

that no recovery could be had if the explosion was caused by the plaintiff's own act in changing the safety-valve intentionally, or by running against it accidentally, and failing to report the fact to the engineer. If he changed the safety-valve intentionally, the act was reckless, and if by running against it, his failure to notify the engineer was gross negligence.

APPEAL from the Circuit Court of Cook County; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. ROCKWELL & LEMAN, for the appellant.

Mr. T. A. MORAN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

About November 1, 1874, appellee was injured by an explosion of a steam tank which was being operated by appellant. The declaration only counts on the grounds of the unsafe, defective, weak, and improper construction of the tank and machinery. There is no averment in the declaration of incapacity, unskillfulness or negligence of those in charge of the machinery. Nor was there any evidence offered of such negligence or want of care by them, but proof of the explosion and injury, simply relying on the presumption of insufficient material or improper construction which arises from the explosion.

To rebut this presumption appellant introduced a number of witnesses, amongst whom was the manufacturer of these tanks. He swore that they were constructed of good material and were well made. Other evidence was to the effect that but a short time previously the tanks had been cleaned inside and out, and were in proper condition. The engineer on duty at the time of the accident swears that the safety-valve, but a few minutes before, was set to blow off steam at thirty-five pounds. And that is shown to be entirely safe for tanks thus constructed. The engineer is shown to have had experience for eight or ten years, and to have been a prudent, cautious man. And he says he saw the tanks but five or six minutes before the explosion,

and he saw nothing that appeared to be wrong. There was no evidence opposed to this. And from the intelligence of these witnesses, their opportunity to be well informed on the subject, it would seem that the presumption of defective material, negligence in constructing the machinery, arising from the explosion, had been rebutted. If there was fault in either, it does not, so far as we can see, appear from the evidence, but on the contrary it seems to be fully rebutted.

There can be no question that when a person provides machinery to be used by his employees he can not be held liable for injury received by the imperfection thereof, if such employer has used a very high degree of care in its manufacture or selection, both as to the material and construction. This certainly fills all the requirements of the law, in the use of diligence as to his employees, in providing such machinery. We will not stop to inquire whether in such cases ordinary prudence or care in making such selection or construction is all the diligence required, as the evidence abundantly shows that the company, in providing the machinery in this case, used a very high, if not the highest, degree of diligence, and has absolved itself from all liability in providing the machinery.

It is urged that the beam of the safety-valve was so adjusted that persons going through the passway, where appellee was engaged in wheeling hair, might be struck by accident, and thus become improperly adjusted, and the explosion may have been thus produced. There is no evidence that any such interference did occur. But, on the contrary, appellee testifies that he did not touch it, and the engineer says he saw it but five or six minutes before the explosion, and it was at that time properly adjusted to thirty-five pounds. This evidence repels any inference that such an accident caused the explosion. And, in contradiction of the theory, no one but appellee is shown to have afterwards gone through the passway, and he denies having touched it. If he did, then his own act must have led to his injury. If he intentionally changed the safety-valve, the act was reckless, or if he did so by running against it accident-

ally, he should have reported the fact to the engineer, that he might have readjusted it; and failing to do so would have been gross negligence. He must have known the safety-valve was an important part of the machinery, and could not but have known that the engineer had it properly adjusted, and that it should not have been changed unless by, or under the direction of, the engineer. It was, therefore, proper that the first of defendant's refused instructions should have been given, and it was error for the court to refuse it. The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*