## Omaha Packing Company v. Thomas Murray.

### Gen. No. 11,177.

1.   EXPLOSION—*when evidence tends to show negligence resulting in an.*   Held, upon a review of the entire evidence in this case, that there was sufficient evidence to warrant the submission to the jury of the question whether the explosion which caused the injuries complained of resulted from the negligence of the defendant.

2. EXPLOSION—*when the doctrine of res ipsa loquitur does not apply to an.* A presumption of negligence does not arise where a servant is injured as the result of an explosion. (Mr. Justice WINDES dissenting in separate opinion.)

3. NEGLIGENCE—*when question of, as one of law, is waived.* A defendant cannot complain of the court's refusal to direct a verdict upon the ground that the evidence does not, as a matter of law, tend to show negligence upon his part, where subsequent to such motion he has requested the court to give instructions submitting such question to the jury as one of fact.

4. ASSUMED RISK—*what not an.* An instruction upon the doctrine of assumed risk, held properly refused, where it omitted the element of the servant's knowledge and appreciation of the danger arising from the risk claimed to have been assumed.

5. INSTRUCTION—*need not repeat substance of another given.* An instruction though correct may be refused without the commission of error where its substance is contained in another instruction given.

6. INSTRUCTIONS—*form of, as to proof essential to recovery.* Held, in this case, that the refusal to give certain instructions, in words as follows, constituted reversible error :

" In cases of this nature the mere fact of the accident of itself alone is not any evidence of negligence on the part of the defendant, but before the plaintiff can recover he must prove that the defendant was guilty of negligence which caused the injury and that the plaintiff himself was free from any want of ordinary care, prudence, vigilance and caution for his own safety.

" The court further instructs you that in this case the explosion of the boiler is no evidence of negligence on the part of the defendant, but before you can find the defendant guilty the plaintiff must prove by a preponderance of the evidence that the explosion was caused through the carelessness of the defendant, and if the plaintiff has failed to prove that fact by a preponderance of all the evidence in the case, your verdict must be not guilty."

WINDES, J., dissenting in part.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County: the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the March term, 1903. Reversed and remanded. Opinion filed February 25, 1904.

LACKNER, BUTZ & MILLER and PECKHAM, BROWN & PACKARD, for appellant.

GEORGE E. GORMAN, for appellee.

PER CURIAM.

Appellee was injured by the explosion on February 8, 1901,

of a compressed air tank or boiler in appellant's packing house, and brought this suit to recover for injuries then suffered, which resulted in a verdict and judgment thereon in his favor of $5,000.  The appellant claims that the evidence fails to show any right of recovery, that the verdict is against the weight of the evidence, the damages are excessive, and that there was error in the refusal of certain instructions requested on its behalf.

No evidence was offered on behalf of appellant, and the first question presented is whether the court committed error in refusing, on appellant's motion, to take the case from the jury because the evidence fails to establish negligence of appellant.  No claim is made that appellee failed to exercise ordinary care.  The negligence charged was, first, the maintenance of the tank in a weak and worn-out condition; second, in subjecting it to a pressure beyond its capacity; third, failure to supply the tank with a safety valve to relieve excessive pressure; and, fourth, failure to provide a gauge by which to determine the pressure.  The evidence, among other things that need not be stated, shows that the tank was constructed of steel, was about thirty inches in diameter and seventy-two inches long, and was used for the purpose of storing compressed air for forcing water out of a well, to be used in appellant's packing house. An air compresser stood about one hundred feet from the tank, and was connected with it by a pipe which conveyed the air from the compresser into the tank.  A pipe extended from the compresser into the well and below the surface of the water.  This pipe conveyed the compressed air into the well and forced the water up into a reservoir, to do which a pressure of eighty to eighty-five pounds in the tank was necessary.  A greater pressure could be obtained by running the compresser at a higher speed or by closing a stop-cock in the pipe leading from the tank to the well.  The closing of this stop-cock cut off the only vent from the tank, and when it was so closed the pressure could be raised to one hundred and twenty-five pounds, but not higher.  No safety valve was connected with the

tank nor any gauge by which to determine the pressure, though there was a gauge upon the pipe leading from the compresser to the tank, about seventy-five or one hundred feet from the latter, which registered the pressure of the air within the tank and the connecting pipes. Immediately prior to the accident appellee had been working for appellant as a steam fitter's helper, and his duties required him to be daily in the room where the tank stood, so near to it that he knew that there was no safety valve on the tank, though he had no duty which required him to examine or have anything to do with the tank. Prior to the accident this tank had been used by appellant for storing compressed air, for six or seven years, and for other purposes for about five or six years more, and during its use had been subjected to a pressure, as late as five months prior to the accident, of about one hundred and twenty-five pounds, and the pressure was frequently raised to ninety-five pounds. When it exploded a witness testified that he noted the pressure at the time of the explosion, and it was from eighty-seven to eighty-nine pounds. Another witness said that he "couldn't exactly say whether the gauge registered ninety pounds or ninety-five." The witness who testified that the pressure was eighty-seven to eighty-nine pounds says that he shut off the cock in the pipe leading from the tank to the well, in order to increase the pressure in the tank, about seven o'clock A. M., and five minutes afterwards the explosion occurred. Two other witnesses say the explosion was about ten minutes after seven o'clock. Prior to the accident there had been a gauge upon the tank, but for some reason, which does not appear, it had been removed and there was no means of ascertaining the pressure upon the tank, except the gauge on the pipe seventy-five or one hundred feet away from the tank. The witnesses agree that on the outside, the tank appeared all right, but two testify that the bottom head, which was the one torn out by the explosion, was scaly or rusty on the inside and in places was eaten out by the rust and stuff that was in the tank, and that the material of the shell was not

as thick in some places as in others—the thinnest part about one-fourth of an inch and the thickest about three-eighths of an inch, and that this was at the bottom of the tank.

We are of opinion that there was sufficient evidence of negligence to go to the jury, when the testimony in regard to the length of time the tank had been used, that the stop-cock was shut off in order to increase the pressure from five to ten minutes before the explosion, that there was no safety valve on the tank, that the bottom head of the tank was rusty and in places eaten out by the rust, is considered in connection with the fact that an explosion occurred which caused appellee's injuries. This evidence we think tends to sustain the 1st and 3rd charges of negligence, namely, the maintenance of the tank in a weak and worn-out condition, and the failure to supply it with a safety valve. It is said that the pipe leading to the well operated as a safety valve, but this was closed by appellant's servant five to ten minutes before the accident, and it is not an unreasonable inference that the pressure may have been greater than was stated by the witnesses. We think there was no error in submitting the case to the jury. Whether the evidence of negligence was sufficient to go to the jury is, however, a question the appellant is precluded from raising in this court, because by its requested instructions it submitted that matter to the jury for determination. Consolidated Coal Co. v. Haenni, 146 Ill. 614–26 ; R. R. Co. v. Schmelling, 197 Ill. 619–25.

The claims of appellant that the verdict is not sustained by the evidence and that the damages are excessive, need not be discussed, in view of the conclusion reached by a majority of the court as to the rulings on instructions.

Among other instructions the appellant asked the following, which were refused, to wit :

2. " The court further instructs you that the plaintiff has shown by his own testimony that he knew the tank in question had no safety valve connected with it; he, therefore, assumed whatever risk there was of operating or using this tank without such safety valve, and no liability can attach to the defendant for the failure to use a safety valve or safety device."

3. "The court instructs you that if you find from the evidence that the plaintiff was injured through the negligence of a fellow-servant of his, then your verdict must be not guilty."

We think the second instruction was properly refused, because it omits a necessary element, viz: that the plaintiff knew and appreciated the danger which he incurred by reason of the tank having no safety valve connected with it. Schymanowski v. Steel Co., 162 Ill. 447–59; Ross v. Shanley, 185 Ill. 390–3; Swift v. O'Neill, 187 Ill. 337–44.

There was no error in refusing the third instruction, because the subject of fellow-servant, under the evidence in the case, is fully covered by the 11th instruction, which was given. .

The court also refused two other instructions requested by appellant, which it is claimed was error. They are as follows:

5. "In cases of this nature the mere fact of the accident of itself alone is not any evidence of negligence on the part of the defendant, but before the plaintiff can recover he must prove that the defendant was guilty of negligence which caused the injury and that the plaintiff himself was free from any want of ordinary care, prudence, vigilance and caution for his own safety."

6. "The court further instructs you that in this case the explosion of the boiler is no evidence of negligence on the part of the defendant; but before you can find the defendant guilty the plaintiff must prove by a preponderance of the evidence that the explosion was caused through some carelessness of the defendant, and if the plaintiff has failed to prove that fact by a preponderance of all the evidence in the case, your verdict must be not guilty."

The majority of the court is of opinion the learned trial judge should have given these instructions, and that their refusal is reversible error for the reason that they state the law correctly as applied to the evidence in the case. Elliott on Railroads, sec. 1299; John Morris Co. v. Southworth, 154 Ill. 118–26; Kranz v. White, 8 Ill. App. 585–90; T. P. R. Co. v. Barrett, 166 U. S. 617–19; Voigt v. Mich. P. C. Co., 112 Mich. 504–6; R. R. Co. v. Lynch,

147 Ind. 165-75; R. R. Co. v. Allen, 78 Ala. 494-503; Cosvlich v. Standard Oil Co., 122 N. Y. 118-23; Earle v. Arbagast, 180 Pa. St. 409-18; Racine v. R. R. Co., 70 Hun, 453; Huff v. Austin, 46 Ohio State, 386.

In the section from Elliott on Railroads cited, the author says: "It is incumbent upon an injured employee who seeks to recover for an injury caused by the explosion of the boiler of a locomotive engine, to affirmatively show that the explosion was the proximate result of negligence on the part of the employer.' It cannot be inferred from the mere fact that there was an explosion, that the employer was guilty of negligence. There must be substantive evidence of negligence, for negligence cannot be presumed, nor can the existence of negligence be left to conjecture." This statement of the law is supported by tho authorities cited, though no case seems to have been decided by the Supreme Court of this state which directly sustains this statement in full. In the Southworth case, *supra*, the question before the court was as to whether damages resulting from the explosion, without any fault of the lessee, of a boiler belonging to the lessor, and leased as a part of the premises, should fall upon the former or the latter. The court said, " We are not disposed to hold that the mere explosion of a stationary boiler is of itself *prima facie* evidence of negligence," and held that the lessor was responsible for the damages caused by the explosion, to a teamster who was rightfully on the leased premises, but not an employee of the defendant.

In the Kranz case this court held, Mr. Justice Bailey delivering the opinion, that where a gas generator belonging to the master, used in his business, and which was under the control and management of one of his employees, exploded, injuring another employee, whose work required her to be constantly near it, it was an error to give an instruction to the jury to the effect that the mere fact that the generator exploded and that plaintiff was in no way connected with its management, if proved, was *prima facie* evidence of negligence. The court said in effect that as be-

tween the proprietor and "a mere stranger, an explosion would raise a *prima facie* presumption of negligence on the part of the proprietor, so as to throw on him the burden of rebutting said presumption by evidence. \* \* \* But the rule has never been extended to cases where the servant who was operating the machinery, or his fellow-servant, was the injured party."

In the Earle case, *supra*, which was one of injury to one not an employee, resulting from the explosion of a rendering tank, the Supreme Court of Pennsylvania said: "The mere fact of the explosion did not throw upon them the burden of proving that they were not negligent." \* \* \* The plaintiff "could not rest his case upon a bare presumption based only upon the fact that an explosion occurred."

In the Huff case, which was the explosion of a steam boiler injuring an employee of the defendants, it was held by the Ohio Supreme Court that the mere fact of the explosion did not raise a *prima facie* presumption of negligence as against the defendants.

In view of these rulings of our courts and of the different states in the cases cited, although it was held by the Supreme Court in Phillips v. Ill. Cent. R. R. Co., 49 Ill. 234–40, which was a suit for an injury to a bystander upon the appellee's depot platform by the explosion of a locomotive boiler, that it was "improper to say that an explosion is not *prima facie* evidence of negligence," we are of opinion that because of the refusal of instructions 5 and 6, a new trial should be awarded. The same rule should be applied here as in cases of explosion of steam boilers, steam pipes and gas generators of the employer, when the injury is to an employee.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

Justice ADAMS : I concur in the decision solely on the ground of the distinction made by the authorities between injury to an employee by an explosion, and a like injury to a stranger.

Justice WINDES: I am unable to yield assent to the opinion of the majority of the court in so far as it holds that it was error to refuse instructions 5 and 6. I think that the maxim of the law, *res ipsa loquitur* applies in this case—that the evidence recited in the majority opinion, which shows that the appellee had nothing to do with the management of the tank, and the fact that it exploded without any fault on his part, was sufficient to make a *prima facie* case of negligence against the appellant. In 1st Shearman & Redfield on Negligence (5th ed.), section 59, the authors, in speaking of this maxim, say: "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." This statement of the law seems to me a reasonable one, and finds support in principle in numerous adjudications of the courts, among which are the Phillips case mentioned in the majority opinion, which was again before the Supreme Court, (55 Ill. 199); Egan v. Allerton P. Co., 86 Ill. 253; John Morris Co. v. Burgess, 44 Ill. App. 27; Armour v. Golkowska, 95 Ill. App. 492–4, and cases cited; same case affirmed 202 Ill. 144–9; Mulcairnes v. City, 67 Wis. 24–33; Young v. Bradford, 80 Tenn. (12 Lea), 232–41; McDonough v. R. R. Co., 87 Ill. App. 31–40, and cases cited; Ill. C. R. R. Co. v. Prickett, 109 Ill. App. 468–76; affirmed, 210 Ill. 140. Only the first three and the last of the above cases cited are boiler explosions, but the others clearly sustain the general principle above quoted.

In the Kranz case this court seems to lay down a different rule where a mere stranger to the defendant is injured by an explosion, than in the case of an employee. The same distinction is made in some of the decisions cited in the majority opinion, but I am unable to see why there should be any different rule between a stranger and an employee of the defendant when neither he nor his fellow-servant has anything to do with the control or management

of the tank or boiler causing his injury.   The plaintiff here was such an employee, and he had no duty with regard to the tank.   The question is one of his employer's duty to him, which is certainly as great as to a stranger whose relation to the tank was not different, under the evidence here, from that of the plaintiff.

In the Phillips case, when first before the Supreme Court, speaking of the steam boiler and its explosion, the court say: "Every day's experience teaches that when the proper quality of iron has been selected under the usual tests, with reasonable care, by skillful and experienced persons, they are safe in their use for practical purposes.   Knowing this, when an explosion has occurred, it is natural to conclude that there has been negligence in selecting, testing or putting the materials together, when constructed into a boiler, or that it has been negligently used, by subjecting it to too high a degree of pressure by steam.   It would, therefore, be improper to say that an explosion is not *prima facie* evidence of negligence."   The court held that it was not error to refuse an instruction similar to instruction 6 in this case.   When the case was again before the Supreme Court (55 Ill. 199) this holding was questioned, and the court was asked to review its former ruling, and it was said: "We have again carefully considered the question and the arguments adduced, and adhere to the former opinion as to the inference from the explosion."   This case has never been overruled so far as I can discover.

In the Burgess case this court considered a suit for injury from a boiler explosion, and held that it was not error to refuse an instruction similar to instruction 6 in this case, and made a careful review of the Phillips case and other cases, and among other things said: "We believe that the public safety will be better secured by adhering to the rule which we understand to be established in this state, that the explosion of a steam boiler, causing injury to a person lawfully present, who sustains no relation of employment or duty to the company or individual operating and controlling the boiler, is *prima facie* evidence of negligence in

those having the management of it, and casts upon them the burden of showing that there was no lack of care and diligence on their part."

In the Prickett case the Appellate Court of the Fourth District held, in the case of the explosion of a locomotive boiler causing the death of the engineer in charge, that the explosion was *prima facie* evidence of the employer's negligence, when it was shown in addition that the explosion was not due to want of care, skill, fault or negligence of the engineer, and say: "The decisions warrant the inference that if a boiler explodes it is because it was improperly used, or because it was defective. If the evidence shows that it was not improperly used, then the conclusion follows that it exploded because it was defective."

Moreover, I think the 5th and 6th instructions are objectionable and were properly refused because they each single out and give prominence to a particular fact in the case, and say that that fact is no evidence of negligence. Such instructions have frequently been held to be erroneous and calculated to mislead the jury because they give special prominence to a particular fact in evidence, to the exclusion of others equally important, and they also tell the jury that such facts are not evidence of negligence. Strehmann v. City, 93 Ill. App. 206–11, and cases cited; C. & E. I. R. R. Co. v. Huston, 196 Ill. 480–3; Hartrich v. Hawes, 202 Ill. 334–42; Loudon v. C. & G. T. Ry. Co., 92 Ill. App. 216–24; W. C. S. R. R. Co. v. Callow, 102 Ill. App. 323–5, and cases cited.